I just ask, is your health sufficiently good that you can make an argument? I feel well enough to proceed, and I'm very grateful for the accommodation, Your Honors. I know it is not ideal. All right. Was your... I'm just... Are you willing to say whether the COVID test was positive or negative? I literally got it one and a half hours ago saying it's negative, so now I have to figure out what is causing my fevers. All right. All right. Well, good. All right. But you're not the first one to argue. The case is number 260926. I'm speaking up for your sake. Hicks v. Martinrea Automotive. Mr. Wade. Thank you, Your Honor. May it please the Court. Your Honor, we file a suit against both a Mississippi defendant, Laura Clark, who was the personnel manager for an out-of-state defendant, Martinrea, which is an automobile parts supplier doing business in Chippewa, Mississippi, but a Canadian corporation. The first thing, I think counsel made a good point, his brief, and he said I should have addressed this jurisdictional issue first, and I think he's got a good point, I think I should have, and that's what I'm going to do. Your Honor, this Court jurisdiction depends upon 28 U.S.C. 1446b3. There's no contention in this case. Everybody agrees that they did not remove this case within 30 days after the complaint was filed, so there's no jurisdiction under b1. And they also agree that the complaint states a claim, and I don't think they've ever said we fraudulently made any fraudulent claims in there, but they removed it, they say based on a deposition which Ms. Hicks gave on September 25th, and they removed it on October 25th under section 3c. If the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, dot, dot, dot, of a copy of a, and this is a crucial language, an amended pleading, motion, order, or other paper. Now the defendants say they had jurisdiction, or this Court has jurisdiction under the, this Court's decision in SWS Erectors, and it is true that SWS Erectors said that a deposition can be, may be under some circumstances, that other paper under the statute. There are several cases, but they're all, now they're all district court cases, Your Honor, but they're district cases in this circuit that interpret SWS Erectors, and the bottom line is that the reasoning of those cases is that that SWS Erectors means that the initial complaint is ambiguous, and then the ambiguity is cleared up. Now there's no, there's nothing in this Court, this Court has never said that. This Court has just said in SWS Erectors there was an ambiguity in the jurisdictional amount, and that was cured up by deposition when the testimony was that it did not meet the jurisdictional amount through deposition. So we'd urge the Court to follow those district court cases and say there is no jurisdiction. One of the reasons is, Your Honor, the Court gives this a broad interpretation and says that SWS Erectors always applies, and that if you give a deposition that can always be grounds for removal, what we'd be talking about is we'd be in state court taking multiple depositions. Some state courts don't even have scheduling orders in this circuit. That's kind of left up to the lawyers. It's not like federal court. So conceivably, we could take, we could go on in state court, take depositions up to two weeks before the trial, and then suddenly it gets removed to federal court on the ground, and somebody said that this deposition formed in other paper to allow removal. So I believe, Your Honor, the sound rule and the simple way to dispose of this case is to hold that there is no jurisdiction and SWS Erectors does not apply when we have a complaint that is totally ambiguous, and there's no, counsel can correct me if I'm wrong, but I don't think he's ever said that we fraudulently put our allegations in there that she was fired because, because she wanted, because the clerk wanted to keep her from testifying at a foreman's cop deposition. They've never said that allegation was fraudulently, it's supported by the timing. They got notice of the deposition on August the 8th, and they fired her on August the 22nd, two days before she was to give her deposition. You're saying the complaint was plausible? Yes, ma'am. And they're removing on the basis that you would, suddenly it becomes implausible because the deposition reveals facts at odds with the theory of the complaint. Your Honor, that's just exactly what they're saying. Yeah. Let me discuss the facts that they rely on, because some of their facts are very dubious. Well, they're all very dubious. The first one is, and this is one the district judge thought was so important, the very last thing after they took her deposition, the last page of her deposition, they asked a question, is to this effect, well, you don't think Ms. Clark had any personal animosity against you, or personal animosity, words to that effect. It's the last page of her deposition, and that's the words, and they rely on that, and I'd say, well, that proves that she doesn't have any claim for malicious interference with contract because she answered in the negative. Well, Your Honor, she'd already answered that the reason they fired her was because they wanted to keep her from giving the deposition. There's a lot of reasons, and I won't get into that unless the court wants to know the answer, but there's a lot of reasons. That's just impeachment material. Oh, well, she had no personal animosity. That just seems like impeachment material. I mean, isn't the standard that the party removing has to show there's no possibility of recovery? No reasonable possibility, yes, Your Honor. That's exactly the standard. And you can't have a claim against, in this context, even if the plaintiff says, well, they had no personal animosity against me. That wouldn't, that wouldn't, that wouldn't, the Mississippi tort, they say, you know, it's called various things. I've misnamed it myself a lot, referred to as malicious interference with employment, but it's also referred to as intentional, and the cases say that what, what that really means is that it's, it's not like layman would think of malice or ill will. It's the intentional doing of a wrongful act without legal or social justification. There's no Mississippi case, Your Honor, that's ever said that if a plaintiff says, well, I don't think that person had any ill will against me, that that means that you have no, no, no claim for intentional interference. I'm going to start, this teaches me a good lesson in the future, just put, unless it's well, there could be circumstances, matters might be properly used, but if we just use the term intentional interference with employment and not put the term malicious in here, we may not have had this argument. But anyway, it's not well taken. My cases, there's just a lot of them stated in the brief as to what that term means, the tort of intentional interference with employment. Second, Your Honor, and here's a thing that's disturbing to me that they relied on, and I think the finding is inappropriate, but the factual basis of it is a concern to me. Judge Acock used the words overwhelming. They produced overwhelming evidence that the real reason they fired her was because of bad parts and not because she was about to give her deposition. Of course, she denied she did any bad parts, and I'm not going into all that. But then they said to support that, they said, furthermore, they produced evidence that they under similar circumstances. And I'd like to refer, Your Honor, to this part of the record, 946 through 976. That's the affidavit of Laura Clark. They furnished this, not, you know, after her deposition was already taken, this was never an issue. And it has all these attachments in it. It does not, contrary to the district court's finding, it does not support the proposition that they had numerous other employees that they gave a three-day warning to and then fired. As I point out in my brief, the names are redacted, so you couldn't reach that conclusion. But I just noticed this in looking at it. Almost all of those postdated her firing. A lot of them in 2019. So they're not trying to prove some practice they had back at the time. And the third thing, I was mistaken. I conceded in the brief that they had seven three-day suspensions and seven-day warnings. I went back and looked again. They didn't have, I couldn't find, but three terminations among those documents, some of which were 2019. What I'm telling you is her affidavit does not support the proposition that other employees had the same thing happen to them. Even if it did, it would be irrelevant because that's defense evidence. It shouldn't be considered. But it was disturbing to me that that affidavit is what seems to be largely relied on, that other employees were treated the same way. Oh, there's a third thing they relied on, and this is also using the defense evidence. They said, well, she obviously wasn't doing it to hinder the deposition because she arranged for the deposition. The record really doesn't support that, Your Honor. The email between the attorneys, the only thing about that is an email that's found on 405 of the record. And it's where the attorney for Martin Ray, the woman's comp attorney for Martin Ray says, this is the day before the deposition, the day, the very day before the deposition. I'm sorry to tell you that Ms. Hicks has been fired, so we can't produce her for deposition, but here's her contact information. When you look at Ms. Clark's deposition, all she actually says is somebody asked her for the contact information and she provided it. That does prove conclusively that she wasn't trying to frustrate the deposition, that that's not the reason that she fired her. But the lawyer, the workman's comp lawyer couldn't have gotten her to the deposition on that short of notice in any event. Now, the fact that he got it six months later, I mean, that doesn't prove anything. On page 406, he refers to a scheduling order and says, I'll get the workman's comp commission to extend the scheduling order or something to that effect. But what could have happened is they might have refused, theoretically, and he might not have gotten the deposition taken. The Mississippi statute, the criminal statute that were involved there talks about an attempt to hinder a witness from an official proceeding. So we think the simple answer to this question is that the court should hold that there is no jurisdiction, that anything else is against public policy and it's going to frustrate the relationship between the state and the federal courts if they can just come up with a deposition on the eve of a state court trial and say, well, I found out here you don't have a case. And it also means that you're conflating the summary judgment standard with a standard for a motion to dismiss because when you start looking at depositions, then you're trying to, you know, decide which side has produced substantial evidence or has not based on an examination of the depositions. Now, let me go to the issue of fraudulent rejoinder, the issue I spend most of the time in the brief on. Here's something, Your Honor, just, I mean, just obvious common sense in what they argue. They argue throughout their brief that you don't have any evidence that anyone except Clark knew about the upcoming deposition. You don't have any evidence the plant manager or the supervisors knew about it. Well, that's true. Nobody admitted that other than Clark, which shows that the case against Clark is stronger than the case against the corporate defendant, against the out-of-state defendant. So if you're going to say we fraudulently joined a defendant, how are you going to say we fraudulently joined a defendant, I mean the state defendant, when the case against the state defendant is much stronger factually than the case against the out-of-state defendant? It makes no sense. It's a stronger case than the Smallwood case where this court held, and Your Honor, Judge Jones, I certainly don't mean to be critical, but Your Honor was a dissenter in that case, but. It's law. I don't criticize it anymore. Well, anyway, but the Smallwood case said if you got a common defense that applies to both, the case is not removable essentially. Now, in this case, to me, it's stronger than Smallwood because you not only have a common defense, that is that they're claiming, well, we fired you because of bad parts, which she denies, and so does her quality control person, her supervisor, who said that there were any number of people that could have been responsible for those parts. They were having trouble with the machines. But regardless, the case is stronger on the facts, much stronger against Clark than it is against the out-of-state defendant. It's also much stronger on the law, Your Honor, for this reason. The tort of intentional interference with contract is well-established. There are worlds of cases in our beliefs about it. And there's not much argument about what the law is. The argument is always about whether the law, under these facts, is there a privilege. Under these facts, have you proved there was an intentional interference? But there's hardly any argument about the law. On the other hand, the law we're primarily relying on against the corporate defendant, the out-of-state defendant, is the Mississippi exception to employment at will, the public policy exception. The issue, up until the Swindle case was decided a couple of years ago by the Mississippi Supreme Court, the only exception to employment at will was reporting illegal activity or failing to report illegal activity. The Swindle case indicated you could also have a cause of action if there's a violation of a clear statute involved. In this case, Judge Acock said, well, Swindle said that, but Swindle did not involve a statute regulating the employer-employee relationship. So, Your Honor, a federal court is now forced to face, if the court keeps this case, for determining a difficult, unsettled question of Mississippi law, and that is when Swindle said they can't fire you if they fired you in violation of a clear statute. Does that apply to any clear statute? Does it apply to a criminal statute? Or does it only apply, as Judge Acock said, to a statute regulating the employer-employee relationship? There's no reason why this court should be deciding that question of state law. That is a question for the Mississippi courts to decide. So, as a practical matter, it's inappropriate for this case to be in federal court. We did not file this case to fraudulently join the local defendant. She was more responsible for it than her employer was, and we request that the court reverse the decision of the district court. Thank you, Your Honor. All right, sir. Thank you. Okay, Mr. Falwaz, your turn. Thank you, Your Honor. May it please the court, Michael Falwaz on behalf of the defendant, I believe. Your Honor, beginning with the removal question, as the court stated in Smallwood, when a case is not initially removable, you can't really conduct the 12B6 analysis. So you are left with a question of, can you then remove based on other paper, and what would be appropriate for the district court to look at when deciding if Joinder was improper? So here, you had an initial complaint, which plaintiff herself says stated the elements of a cause of action. Well, ethically, it would not have been proper to remove at that time based on the allegations in the complaint. But Smallwood noted that there are circumstances, this being one of them, where the complaint omits or misstates discrete facts.  Plaintiff in the complaint states that she was terminated to preclude her deposition. At her actual deposition, she says, I was never told not to appear for the deposition, and no one mentioned the deposition to me. She claimed that Clark acted maliciously, and this is crucial because it's a provable fact, and Clark lied about prior write-ups that plaintiff had received in the past leading up to her termination. At her deposition, she conceded that that was an inaccurate statement in the complaint. She did have a history of write-ups, and she had been suspended from work for three days, about eight months before she was ultimately terminated. Counsel, this is Judge Costa. Can you let me know if you can't hear me? I mean, that's good impeachment evidence that, oh, she had a bad work history. She had trouble at work before this. Maybe that's why she was fired, not because of this deposition. But, I mean, what case law supports that that meets the improper joinder standard of meaning there's no reasonable possibility of recovery? Well, Your Honor, I think what you have to look at then would be the substantive claim. She's proceeding on a tortious interference claim in which she has to show that there were intentional and willful acts. That comes from the Mississippi Supreme Court that were calculated to cause her damage, and they were done without right or any justifiable cause by the defense. All right. But, I mean, every employment case is the plaintiff saying, you fired me for some wrongful reason, and the company's saying, oh, no, we had a bunch of good reasons. You know, you showed up late. You had a disciplinary history, et cetera. I mean, your position seems to be just saying whenever you recover some information and discovery that shows a legitimate reason for the termination, the case, therefore, would have no reasonable possibility of recovery, and you could remove it. That's not my position, Your Honor. I think what we're arguing is what she stated in her testimony, that there was no intentional conduct towards her, that what she stated in her complaint was misstatements of facts. They were inaccurate statements of facts, and her testimony changed what she said in her complaint. It made it clear that she could no longer satisfy elements of the cause of action upon which she was suing in state court, and if she can't satisfy certain elements of the cause of action, then she has no reasonable basis for recovery against the in-state defendant. Your case law is saying while you can look at summary judgment type evidence for improper joinder, it's not the typical summary judgment standard of is there evidence to support the claim. You've really got to show, you've got to basically have evidence that defeats the claim, like when someone sues an in-state doctor when they're going after the pharmaceutical company because they want to avoid federal court, and it turns out that doctor didn't even prescribe the medication, and sure, then that fact completely defeats the claim. I mean, what's your best case for something, evidence like this, that you think supported removal on an improper joinder theory? So, Your Honor, I have really a set of about four facts. One is that she was written up by two different shift supervisors in a period of eight days, neither of whom knew about the deposition, and they recommended that she be disciplined. Ms. Clark, the named defendant, is an HR manager. She did not and could not make the decision to terminate plaintiffs on her own. A production supervisor who would oversee the plaintiff, who trained the plaintiff, was a decision maker in the decision to terminate her, and he didn't know about that. I guess, and it's hard with the telephone. My question was, what's the best Fifth Circuit case that you think has somewhat, you know, in the ballpark of facts where something came out in discovery that only then supported a removal under improper joinder? I think, Your Honor, potentially we could be looking at something like SWS erectors where the removal came after the fact. I mean, the typical removal is done at the outset because the complaint on its face supports removal. And I think, as the court recognized in Smallwood, there are certain cases where it is not clearly removable at the beginning, so we have to provide a mechanism where if you receive information during the course of litigation, you can remove. And what the district court did here is the district judge said, look, you folks have on remand. Both sides have presented me a mountain of documentary evidence to consider because you went through the discovery process. So I can't do some preliminary assessment. I have to do the summary inquiry. And I have to ask, is there a reasonable basis that she could succeed on this claim? And the district court, I believe, correctly found, based on the court's precedent, that she had no reasonable likelihood of success on the intentional interference claim. As I said, Your Honor, she has to show bad faith. That is not an easy standard to prove. And when you have somebody else making the decision to terminate you and that person is not aware of anything relating to what you say you were really fired for to prevent her from testifying, it's very hard then to establish that bad faith. I think it's impossible to do that. But moreover, Your Honor, I think there's something that we don't have to suspend common sense. And I've been troubled by one key issue with this case, and it's set forth in our brief. If there is a nefarious employer looking to prevent a third-party deposition of an employee, how would firing that employee prevent the deposition? I mean, you would lose all control over that employee. You can't—I would think a nefarious employer would keep the employee and threaten them if they didn't testify a certain way. But to the contrary, Martin Reyes said, you are hereby fired. And by the way, Martin Reyes, Workers' Com Council, here's her number. You have to go ahead and coordinate her deposition, which then occurred. I guess the argument would be you deter other people from coming forward, too, if you do that. At least that'd be the theory. What about opposing counsel's argument that if anything, the claim was stronger against Clark than against the corporation? Well, Your Honor, I don't think you can fairly compare them because it's apples to oranges. The claim against Ms. Clark is for intentional interference with contract with employment. The claim against Martin Reyes is solely witness tampering. And the defenses are completely different. So it's hard to say that one is stronger than the other. Why isn't your defense of, look, they were going to let the deposition happen anyway. Why isn't that—seems to me that's a defense to both. How's it witness tampering if the evidence has come out that there was no interference with her going to this deposition? Well, it's not, Your Honor, for two reasons. So in Smallwood, the court made very clear that the common defense rule applies if the that goes to the merits of the case. And the way they explained that was, for example, in Smallwood is a preemption defense. And I was struck by something in the dissent in that case, trying to respond to the majority, but I thought it was very telling. And I apologize. I normally don't read quotes. But the majority argues that when both defendants possess the same complete defense, the claim is meritless and the case is non-removable. That's what Your Honor just said. Yet the majority surely does not contend that the meritless case is non-removable when the respective defenses of the diverse and non-diverse defendants are different and result in the dismissal of the entire case. We have that latter scenario here. Your Honor, when we talk about the bad faith and the intentional interference issues, you are focused on what did Defendant Clark know? What did she do? What informed her decision? Can you establish bad faith on her part? When we talk about Martin Rea, Your Honor, I don't mean that flippantly, but the facts don't matter. Our position is a legal argument. Under Mississippi law, she was an at-will employee. And the only way that she could be fired for any reason or no reason, with only a couple of exceptions, was she asked to commit an illegal act? Was she reporting illegal conduct? Those don't apply. And the other exception deals with the limited circumstances where something is declared legally impermissible under state or federal law. And the examples of that are Title VII. Or, as in this Court Simmons case, there's a Mississippi law prohibiting the termination of employees for jury service. It's a statute governing employer-employee relationships. Swindoll is a Mississippi Supreme Court case finding that you cannot terminate an employee for keeping a gun in the vehicle because there's a Mississippi statute that says you can't do that. It governs employer-employee relationships. Now, look at the claim in this case against the corporation. It's a general criminal statute. I apologize, somebody was speaking. It's a general criminal statute dealing with witness tapering that applies to any person. It does not regulate conduct between employers and employees. And you can see that, Your Honor, through other Mississippi cases where they have held termination and found no claim when an employee asserted worker's compensation claim and were fired in retaliation, the Mississippi Supreme Court said no statute protects you from adverse employment action in Mississippi for filing a worker's compensation claim. The same is true of this witness tampering statute. It does not govern employer-employee relationships. The court need not look at the facts at all of the case in order to find Martin Rea not liable. But the court must look at the facts of this case. And as I said before, the facts come directly from plaintiff's testimony with one exception of single declaration. But everything else... It sounds like you're saying the witness tampering claim is very weak and barred as a legal matter. Correct, against Martin Rea. It is not, Your Honor, on appeal. The plaintiffs seem to have abandoned any sort of witness tampering claim against the in-state defendant, Clark. They focused exclusively on the intentional interference claim. There is no argument, analysis, or anything relating to the witness tampering claim as it relates to Laura Clark. It is not in the briefing. And in fact, we dropped a footnote in the brief indicating that having done that, they've So there are two separate and distinct claims with separate proofs and separate defenses. And I think the small wood common defense theme simply doesn't apply. So, Your Honor, looking at the various pieces of evidence here, I understand the questions the court is asking. I understand the concern that, well, gee, can you just suddenly say, oh, look, there's a new piece of information in a deposition. And so I can remove... I don't believe the standard is that loose or should be applied in that manner. Well, the SWX Erector's case, which you said was your best case, that's a case where discovery revealed that the amount in controversy, a jurisdictional requirement was in fact met. So that's not even an improper joinder. What's your best improper joinder case based on something that comes out in discovery, like through a deposition? Your Honor, it's hard for me to say that. I'm thinking maybe Travis was the case that's on my mind that was an improper joinder case dealing with those kinds of issues. Travis, it was Travis versus Arby. Right. Okay. That might be the case on point. I'm happy to offer a one-page supplement responding to that if the court deems that appropriate or necessary. But I think the key here is that Smallwood did in fact provide for that, making clear that if you receive another paper, if you receive information in which the plaintiff has stated a claim but has misstated or omitted discrete facts that would have determined the propriety of joinder, then you are allowed to remove. And I think the omission of key facts and the misstatement of key facts in the complaint that would undermine her intentional interference claim provide that mechanism in this case. Your Honor, unless the court has any other questions, I think I have presented everything that the court has raised or has presented in their argument. I think we have your argument. So thank you very much for giving back some time.  Thank you, Your Honor. Mr. Butler? Your Honor, the court played to know it, not the court's fault. But I can't hear it in my left ear. So a lot of what counsel said, I didn't hear. So the court may have some questions for me. But I want to respond to the points that I heard him make. He seemed very concerned that our complaint said she didn't have a significant prior disciplinary history or something of that effect. And we did say that. Looking back on it, I wouldn't have said that had I fully appreciated the situation. But I will say this. According to the testimony, she makes 300 parts a day. That lengthy disciplinary history, when they say they distinguish between what's called a corrective action, which is not discipline, and a disciplinary action, which is. If you average five or six, she's been there five years. And there are five or six prior disciplinary actions over that time. If you compare it to the number of parts she's making and how that compares to other employees, I'm not sure she did have a significant disciplinary history. And if all she got on those things was a, quote, corrective action, there wouldn't be things she would have known about. So I don't think, if the court struck that from the, I mean, let's assume that she had a significant disciplinary history. Or there's evidence of that. You also have evidence from the plant manager, from Ms. Clark herself, from her quality control supervisor, Ms. Crawford, that she was a great employee. You just got an employee of the month. So all you got is a contradiction in the evidence as to what kind of employee she was. So if I'd said instead of without significant history that she was a great employee, we could have fully supported that with evidence by their own witnesses. So we don't think that's, we don't think that's significant. I'm trying to remember what other, oh, the fact itself about the three-day write-up is surprising. I mean, not surprising, it's concerning to me. If I can't find it, it's right off the top of my head, I'll send the court the page number. But the three-day, when she gave her testimony in her unemployment hearing, this is right two weeks or so after she's fired, she was asked about whether she'd gotten a three-day suspension. And she answered, yes, it's been three or four years ago. When she gave her deposition, I'm talking about the plaintiff now. When she gave her deposition, of course, it became much more crucial because counsel had there what purported to be a three-day suspension notice dated in late 2017, which would be within the one year. And she asked her, yes, did you get one and shows her that in December 2017? And she answered, yes. So her testimony contradicted itself about when that three-day suspension occurred. But when you look at the three-day suspension, I believe it is cited in my brief where that is, it's totally blank. Nobody signed it. The supervisor didn't sign it, she didn't sign it. It's a totally blank form. So what I'm telling the court, I already told you that I'm concerned about this affidavit which makes attachments which purport to show other incidents. And when you really look at them carefully, they don't show that at all, other previous employees. And now I'm concerned about whether that three-day suspension really occurred within this one-year period or whether it occurred three or four years ago, as she said, in the unemployment. All of this is factual in nature and it's all the kind of thing that should be resolved at a trial and certainly not on a jurisdictional motion where there's a question about whether there's any reasonable basis to believe a court had jurisdiction. Oh, Your Honor, the things about that, he said that she got these two suspension, two disciplinary actions, one on the specific date of them is August 13th and then August 22nd. The testimony according to her was, according to them, on August 13th, they gave her what's called a, it's not a disciplinary action form. It's a corrective action notice or something like that. It's not disciplinary, according to them themselves. They had some explanation for why they didn't, but they did not give her one according to them. According to her, she was told she was fired, not for that incident, but for the August 22nd bad parts, which she said there were five or six maintenance people down there trying to get parts. That was corroborated by Crawford. They were throwing parts everywhere and they, according to her, they gave her no document at all on the August 22nd incident. And of course, Crawford, this is their witness, their quality control person who told Clark the day after, anybody could have had those bad parts in there. There's one final thing that's suspicious about Clark. She claimed in her, I can't remember whether it was the, like the unemployment hearing or the deposition, one or the other, she claimed Nissan got these bad parts and they had to, you know, they were all upset because they got the bad parts on the car. Production manager said, no, that wasn't true. They found the bad part before it ever left the facility, before it ever went to Nissan. Anyway, there's a lot of questions about the credibility of that case, Your Honor, but there's no jurisdiction in any of that. Thank you, Your Honor. JUSTICE GILBERT All right. Thank you very much. Thank you, Mr. Flores, for your participation in this way. The court will stand in recess for this sitting.